# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RSUI INDEMNITY COMPANY, <br><br> Defendants. | CASE NUMBER 1:11-CV-173 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes plaintiff, Travelers Property Casualty Company of America ("Travelers"), by and through its attorneys, Jean M. Golden and John Hackett of Cassiday Schade, LLP, and for its Complaint for Declaratory Judgment, states as follows:

## ACTION FOR DECLARATORY JUDGMENT

1. Through this action, Travelers seeks a judgment pursuant to Sections 2201 and 2202 of Title 28 of the United States Code, 28 U.S.C. §§2201, 2002, declaring and establishing that certain underlying claims asserted against Valley Meats, Inc. (hereinafter "the insured") involved a single occurrence, thereby obligating RSUI Indemnity Company ("RSUI") to provide reimbursement to Travelers with respect to the settlement of said claims.

## JURISDICTION

2. The jurisdiction of this Court is pursuant to Section 1332 of Title 28 of the United States Code, 28 U.S.C. §1332, as there is complete diversity of citizenship between Travelers and RSUI, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## VENUE

3. Venue is proper in this Court pursuant to Section 1391(a)(2) of Title 28 of the United States Code, 28 U.S.C. §139(a)(2), as the policies at issue were issued to an Illinois limited liability company through an Illinois broker.

## PARTIES

4. At all times relevant hereto, Travelers was an insurance company incorporated in the State of Connecticut with its principal place of business in Connecticut. Travelers issued a certain primary policy of liability insurance to the insured as more fully described below.

5. At all times relevant hereto, RSUI was an insurance company incorporated in the State of New Hampshire with its principal place of business in Georgia. RSUI issued a certain excess policy of liability insurance to the insured as more fully described below.

## UNDERLYING CLAIMS

6. The insured is a manufacturer of beef and pork products, including hamburgers, that are distributed to restaurants and other institutional food service outlets.

7. In or about May of 2009, the United States Department of Agriculture ("USDA") requested that the insured conduct a voluntary recall of the ground beef products, including hamburgers, that it produced on March 10, 2009.

8. Pursuant to the USDA's request, on May 21, 2009, the insured recalled the ground beef products, including hamburgers, that it produced on March 10, 2009.

9. A claimant (hereinafter referred to as "Claimant A") asserted a claim against the insured, alleging that he became ill on April 11, 2009 after consuming a hamburger produced by the insured.

10. Claimant A was admitted to the hospital on April 18, 2009.

11. Claimant A's stool sample tested positive for E. coli O157:H7.

12. Claimant A remained hospitalized until May 1, 2009 and was then admitted to a nursing home.

13. On June 5, 2009, Claimant A was discharged from the nursing home, and he later died.

14. Claimant A's claim against the insured was one of primary contamination in that he alleged that he contracted E. coli because he consumed a contaminated hamburger produced by the insured.

15. A claim was also asserted against the insured on behalf of Claimant A's granddaughter (hereinafter referred to as "Claimant B").

16. It was alleged that Claimant B became ill and died due to exposure to Claimant A's E. coli infection.

17. Claimant B became ill and was admitted to the hospital on May 11, 2009.

18. Claimant B tested positive for the same strain of E. Coli found in Claimant A.

19. Claimant B was diagnosed with hemolytic uremic syndrome ("HUS"), which is acute renal failure caused by E. coli.

20. Claimant B suffered a stroke, which is a complication of HUS, and died on May 17, 2009.

21. Claimant B's claim against the insured was one of secondary contamination in that she alleged that she contracted E. coli through exposure to Claimant A's E. coli infection rather than by directly consuming the insured's product.

## **POLICIES**

22. Travelers issued a policy, numbered Y-630-2430M260-TIL-09, to the insured that was in effect between April 4, 2009 and April 4, 2010. A copy of the Travelers policy is attached hereto and made a part hereof as Exhibit "A."

23. The limits of liability of the Travelers policy are $1 million each occurrence and $2 million in the aggregate.

24. The Travelers policy contains, among others, the following provisions in the Commercial General Liability Coverage Form (CG 00 01 10 01):

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement.**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages….We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    \* \* \*

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

4

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C**;

  **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard;" and

  **c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will under Coverage **B** for the sum of all damages because of all "personal injury and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A**; and

  **b.** Medical expenses under Coverage **C**

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

* * *

**SECTION V – DEFINITIONS**

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

25. RSUI issued an excess policy, numbered NHN048430, to the insured that was in effect for the same period of time as the Travelers policy, between April 4, 2009 and April 4, 2010 (the "RSUI policy"). A copy of the RSUI policy is attached hereto and incorporated herein as Exhibit "B."

26. The RSUI policy is excess to the Travelers policy and has limits of $10 each occurrence and in the aggregate.

27. The RSUI policy states, in pertinent part, as follows:

**I.   INSURING AGREEMENT**

   **1.**   We will pay on behalf of the insured those sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages to which this insurance applies because of "bodily injury", "property damage" or "personal and advertising injury".

   We will also pay all sums the insured becomes legally obligated to pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "occurrence" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "occurrence".

   The amount we will pay for damages is limited as described in Section VI. - LIMITS OF INSURANCE. If we are prevented by law from paying damages on behalf of the insured, we will indemnify the insured for those sums in excess of the "retained limit" up to the applicable limit of insurance shown in the Declarations.

   \*   \*   \*

**V.   DEFINITIONS**

   \*   \*   \*

   **14.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   \*   \*   \*

**VI.   LIMITS OF INSURANCE**

6

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The Limits of Insurance shown in the Declarations as Each Occurrence are the most we will pay for damages because of "bodily injury", "personal and advertising injury", "property damage", and "covered pollution cost or expense" arising out of any one "occurrence" or offense.

3. The Limits of Insurance shown in the Declarations as the Aggregate Where Applicable are the most we will pay for all damages separately for each coverage, project or location in the same manner that a separate aggregate limit of insurance is provided by the policies shown in the Schedule of Underlying Insurance.

4. If the applicable limits of the "underlying insurance" or other insurance are reduced or exhausted by payment for "bodily injury", "property damage" or "covered pollution cost or expense" which occurs or "personal and advertising injury" which is committed during the policy period of this policy, the limits of this policy will apply in excess of such reduced or exhausted limits.

5. The limits of insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding policy period for purposes of determining the limit of insurance.

\* \* \*

**UNDERLYING SETTLEMENTS**

28. Travelers and RSUI disagreed on whether Claimant A's claim and Claimant B's claim involved one occurrence or two occurrences, with Travelers contending that the claims involved a single occurrence, and RSUI contending that they involved two occurrences.

7

29. Claimant A's and Claimant's B's claims were settled for a combined, total amount in excess of Travelers' per occurrence limit.

30. Travelers and RSUI agreed that Travelers would pay a specified amount in excess of its per occurrence limit to settle Claimant A's claim, subject to Travelers' right to seek recoupment of that amount from RSUI based on Travelers' assertion that the two claims involved one occurrence as that term is defined in the Travelers and RSUI policies.

### **TRAVELERS' CLAIM**

31. Claimant A's and Claimant B's claims involved one occurrence, as that term is defined in the Travelers and RSUI policies, and RSUI must reimburse Travelers for the amount Travelers paid in excess of its per occurrence limit to settle Claimant A's and Claimant B's claims.

32. An actual controversy exists between Travelers and RSUI, and, pursuant to Sections 2201 and 2202 of Title 28 of the United States Code, 28 U.S.C. §§2201, 2202, this Court has the power to declare the rights and obligations of the parties hereto and to grant such other and further relief as may be necessary.

WHEREFORE, the plaintiff, Travelers Property Casualty Company of America, prays that this Court find and declare as follows:

A. Claimant A's and Claimant B's claims arose out of a single occurrence as that term is defined in the insurance policies issued by Travelers and RSUI Indemnity Company;

B. Travelers was only responsible to pay one per occurrence limit towards the settlements relating to Claimant A's and Claimant B's claims;

C. RSUI must reimburse Travelers for the amount Travelers paid in excess of its per occurrence limit, plus pre-judgment interest;

D. Grant any further relief as it deems just and equitable.

Respectfully submitted,

*Attorneys for Travelers Property Casualty Company of America*

By: s/John D. Hackett
     Jean M. Golden (ARDC #0988995)
     John D. Hackett (ARDC #6196747)
     CASSIDAY SCHADE, LLP
     20 North Wacker Drive
     Suite 1000
     Chicago, IL 60606
     (312) 641-3100

7405109