IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | No. 11 C 0173 |
| v. | ) ) | Judge Robert W. Gettleman |
| RSUI INDEMNITY COMPANY, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This dispute between two insurance companies, plaintiff Travelers Property Casualty Company of America ("Travelers") and defendant RSUI Indemnity Company ("RSUI"), arises out of a settlement on behalf of their mutual insured, Valley Meats, Inc. ("Valley Meats") with John Strike and his granddaughter Abigail Fenstermaker. Strike became sick after eating ground beef manufactured by Valley Meats that was tainted with E. coli bacteria. Fenstermaker also became sick, apparently contracting an E. coli infection from Strike, and ultimately died. Travelers had issued a primary general liability policy to Valley Meats with limits of $1 million per occurrence and $2 million in the aggregate. RSUI had issued an excess policy to Valley Meats, with limits of $10 million per occurrence and in the aggregate. To protect Valley Meat's interests, when the opportunity arose to settle Strike's claim for $500,000 and Fenstermaker's claim for $2.5 million Travelers agreed to pay an additional $500,000 above its per occurrence limit, subject to its right to recoup that amount from RSUI if the court determines that the Strike and Fenstermaker claims involved a single occurrence.

Travelers has sued RSUI seeking a declaration that the two claims involved a single occurrence as that term is defined in the two insurance policies, and that RSUI owes it

reimbursement of the amount Travelers paid in excess of its single occurrence limit. RSUI has answered and counterclaimed, seeking a declaration that the claims involved two separate occurrences and that it owes no reimbursement to Travelers. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the court grants Travelers' motion and denies RSUI's motion.

## FACTS

Valley Meats is a manufacturer of beef and pork products including hamburgers, that are distributed to restaurants and other institutional food service outlets. In early May 2009, the Ohio Department of Health ("ODH") identified a cluster of E. coli infections as strain no. O157:H7, and concluded that the infections were all linked to ground beef produced by Valley Meats. The ODH identified three primary cases (i.e., cases were the infections were contracted by eating Valley Meats' ground beef); and one secondary infection (where the E. coli infection was transmitted by one infected person to another person).

Strike was identified as one of the primary cases. He became ill after eating Valley Meats' ground beef for lunch at a VFW hall on April 11, 2009. He was admitted to the hospital on April 18, 2009, testing positive for E. coli strain O157. He remained in the hospital until May 1, 2009, when he was admitted to a nursing home. On June 5, 2009, he was discharged from the nursing home to live with his daughter, Fenstermaker's mother.

Fenstermaker was identified by the ODH as the secondary case. She became ill on May 9, 2009, and was admitted to the hospital on May 11, testing positive for the same E. coli strain. She was subsequently diagnosed with hemolytic uremic syndrome ("HUS"), which is acute renal failure caused by E. coli. She suffered a stroke and died on May 17, 2009.

Both Travelers and RSUI had issued policies to Valley Meats for the period April 4, 2009 through April10, 2010. The Travelers' policy limits were $1 million per occurrence and $2 million in the aggregate. The RSUI policy was in excess of the Travelers' policy with a single limit of $10 million per occurrence and in the aggregate. Both policies covered damages for "bodily injury" and define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Both insurers settled with Strike and Fenstermaker's estate, recognizing that their insured, Valley Meats, was responsible for the contaminated meat, reserving for this lawsuit the single issue of whether the Strike and Fenstermaker claims constitute a single or multiple occurrences under the Travelers' policy.

## DISCUSSION

As noted, the policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not, however, indicate when an injury will be treated as a separate occurrence. Thus, the court "must construe the policy by applying the facts of the case." Addison Ins. Co. v. Fay, 232 Ill.2d 446, 455 (2009). In doing so, the court's primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. Id. (citing Nicor, Inc. v. Associated Elec. And Gas Insur. Services, Ltd., 223 Ill.2d 407 (2006)).

The parties agree that in Nicor, the Illinois Supreme Court adopted the "cause theory" to determine the number of occurrences under an insurance policy. Nicor, 223 Ill.2d at 419-20. Under this theory the court determines the number of occurrences by referring to the cause or causes of the damage. Id. at 418. That is all that the parties agree on because, as demonstrated in Nicor, 232 Ill.2d at 420-31, and the discussion of Nicor in Addison, 232 Ill.2d at 454-57,

3

application of the cause theory to a particular factual situation has proved to be difficult, requiring further refinement. Ultimately, the Nicor court concluded (223 Ill.2d at 432):

> Where each asserted loss is a result of a separate and intervening human act, whether negligent or intentional, or each increased the insured's exposure to liability, Illinois law will deem each such loss to have arisen from a separate occurrence. By contrast, where the damages for which coverage is sought resulted from the manufacture and sale of defective products or a fraudulent sale's scheme, the loss will be found to have emanated from a single cause and there will be but one occurrence for purposes of the applicable policies.

Application of Nicor's standard to the instant case, at least according to Travelers, leads to the inescapable conclusion that there is but one cause of the claimants' injuries, and thus one occurrence under the policies. According to Travelers, the damages for which coverage is sought (Strike's and Fenstermaker's injuries), resulted from the manufacture and sale of the contaminated meat. Thus, the loss "emanated from a single cause" and there was but one occurrence.

Not surprisingly, RSUI sees it differently, arguing that the "time and space" test used in Addison is applicable. Under that test if the court determines that "cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event," then the injuries will be deemed to be the result of one occurrence. Addison, 232 Ill.2d at 460. Because it is undisputed that 23 days elapsed between Strike's onset of symptoms and Fenstermaker's onset of symptoms, RSUI argues that it is not possible to conclude that the two claims are so closely linked in time that an average person would consider them one event.

In Addison, two young boys went fishing at a nearby lake. When they did not return the police were called and conducted a search, but were unable to locate them. The boys' bodies were found three days later in an excavation pit on land near one of the boy's home. The

4

landowner was insured by Addison Insurance Company ("Addison"). The pit in which the boys were found was partially filled with water and the surrounding sand and clay were saturated, creating a "quick condition." The boys were found at the edge of the pool of water, trapped in the clay and sand. Investigators concluded that the boys became trapped while returning home to get out of a storm that had swept in. The boys used the property as a short cut. One tried to jump across the water, became trapped, then the other boy became trapped in an attempt to help the first.

The families sued the landowner and Addison agreed to settle the claims for an amount equal to the policy limits. The parties disputed which limit applied, the $1 million limit for each occurrence or the $2 million aggregate limit. Addison, 232 Ill.2d at 448-50.

The Addison court first noted that its decision in Nicor involved "affirmative acts of negligence rather than an ongoing negligent omission" that was involved in Addison. Id. at 457. The court then agreed with Addison that the landowner's liability arose from his "negligent failing to properly secure and control his property and that he had "committed no intervening negligent act between the injuries of each boy," suggesting that there was but one occurrence. Id. at 458.

Nonetheless, the Addison court concluded that applying Nicor would lead to an unreasonable interpretation of the policy. "Focusing on the sole negligent omission of failing to secure the property would allow two injuries, days or even weeks apart, to be considered one occurrence." Id. Therefore, the court concluded that "in situations where a continuous negligent omission results in [separate] insurable injuries, some limiting principle must be applied." Id. The limiting principle that the court decided upon was a "time and space" test. "Where

5

negligence is the result of an ongoing omission rather than separate affirmative acts, a time and space test effectively limits what would otherwise potentially be a limitless bundling of injuries into a single occurrence." Id. at 461.

As is evident from the above discussion, RSUI's assertion that Addison "added a time and space element to the cause test" in every case is inaccurate. The time and space test is used only when the negligence alleged is the result of an "ongoing omission," such as the failure by the land owner in Addison to secure his property. Id.

As Travelers correctly argues, the negligence asserted against Valley Meats is a discreet act – the production of a single batch of tainted meat. There were no intervening acts of negligence by Valley Meats that occurred between the time Strike and Fenstermaker became ill. Because the damages for which coverage is sought result from the manufacture and sale of a defective product, "the loss emanates from a single cause and there is but one occurrence." Nicor, 223 Ill.2d at 432. Accordingly, Travelers' motion for summary judgment is granted and RSUI's cross motion for summary judgment is denied.

## CONCLUSION

For the reasons described above, plaintiff Travelers' motion for summary judgment is granted. Defendant-counter-plaintiff RSUI's cross motion for summary judgment is denied.

**ENTER:** February 3, 2012

_____
**Robert W. Gettleman
United States District Judge**

6